UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 18-23507-CV-UNGARO
MAGISTRATE JUDGE REID

RAYMOND JOHNSON,

     Petitioner,

v.

MARK S. INCH,[1]

     Respondent.

_____/

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE ON PETITION FOR WRIT OF HABEAS CORPUS

### I.  Introduction

The *pro se* petitioner, **Raymond Johnson**, who is currently out of custody, was confined at the Hamilton Correctional Institution when he filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is challenging the constitutionality of his conviction and sentence, entered in the Eleventh Judicial Circuit, Miami-Dade County, Case No. 13-28316 and a violation of probation in Case No. 92-40788-B. [ECF No. 1]. Petitioner pleaded guilty to the charges in Case

---

1. Mark S. Inch is the proper respondent in this proceeding.  Inch should, therefore, "automatically" be substituted as a party under Federal Rules of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

No. 13-28316 and admitted a violation of probation in Case No. 92-40788B. [*Id*].

This Cause has been referred to the undersigned for consideration and report, pursuant to 28 U.S.C. § 636(b)(1)(B) and the Rules Governing Habeas Corpus Petitions in the United States District Courts.

For its consideration of the petition [ECF No. 1], the court has received the state's response to the order to show cause [ECF No. 14], along with its supporting appendices [ECF Nos. 14-1 to 14-7] containing copies of relevant state court records and transcripts, and Petitioner's reply [ECF No. 17].

After reviewing the pleadings, for the reasons stated in this Report, the Undersigned recommends that the petition be DENIED because Petitioner is not entitled to relief on the merits.

## II. Factual and Procedural History

**A.     Trial Court Proceedings**

Petitioner pleaded guilty to two counts of aggravated stalking after entry of a domestic violence injunction (Counts I and IV), two counts of willful violation of a domestic violence injunction (Counts II and III), three counts of violation of pretrial release conditions (Counts V, VI and VIII), and one count of sending a threat to kill or commit bodily injury (Count VII) in Case no. 13-28316. [ECF No. 14-2 at 61]. Petitioner also admitted to a violation of probation in Case No. 92-40788-B. [*Id*. at 48-49]. The court imposed a sentence of six years on Counts I, IV and VII and time

served on the remaining counts. The sentences imposed in both cases were made concurrent and, although Petitioner was adjudicated a habitual violent felony offender, the mandatory ten-year sentence was waived. [*Id*. at 32, 35]. The sentences were imposed on August 22, 2014.

On August 24, 2014, Petitioner filed a *pro se* motion to withdraw his guilty plea. [*Id*. at 68-72]. He amended the motion on September 9, 2014. [*Id*. at 74-78]. The motion to withdraw plea only sought to withdraw Petitioner's plea in Case No. 13-28316. [*Id*. at 77]. Petitioner alleged that counsel had misadvised him that the sentences would expire simultaneously. He contended that the state did not disclose that the two six-year sentences could not be concurrent. The court conducted an *ex parte* hearing in which the state argued that the claims were refuted by the record. [*Id*. at 80-86]. The court reviewed the plea colloquy and denied the motion, agreeing that the claims were refuted by the record. [*Id*. at 86].

## B.   Direct Appeal

Petitioner appealed the denial of his motion to withdraw his guilty plea. He argued that:

1. The trial court abused its discretion by altering the transcript from the August 22, 2014 plea colloquy.

2. The trial court abused its discretion by failing to respond to his claim that that counsel misrepresented the plea agreement.

3. The trial court violated his right to conflict-free counsel by allowing defense counsel to represent him at the change of plea hearing.

3

4. The trial court violated his due process rights by sentencing him as a habitual violent felony offender without his knowledge.

5. Defense counsel was ineffective for failing to disclose deposition testimony by a witness that exonerated him of all charges in case number F13-28316.

6. Defense counsel was ineffective for coercing him to plead to an illegal sentence.

[ECF No. 14-3 at 13-46]. The appellate court affirmed the denial of the motion to withdraw plea in a *per curiam* affirmance. *Johnson v. State*, 208 So.3d 713 (Fla. 3d DCA 2016). Rehearing was denied on October 13, 2016. [ECF No. 14-4 at 75-76].

## C. Rule 3.850 Motion

Petitioner filed a motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850 ("Rule 3.850 motion") raising the following claims:

1. Counsel was ineffective for coercing Petitioner to accept an illegal sentence that the court lacked jurisdiction to impose and that exceeded the maximum sentence authorized by law.

2. The trial court denied him due process by failing to rule on his claim that counsel misadvised him on the plea deal.

3. He was denied the right to effective assistance of counsel because counsel placed his personal interest and the interest of the court above Petitioner's interest.

4. Counsel was ineffective for coercing Petitioner to accept a plea of six years as a habitual violent felony offender where counsel knew that Petitioner was innocent.

5. Counsel was ineffective for withholding exonerating deposition testimony of the victim.

6. The trial court violated Petitioner's due process rights by altering the transcript of the change of plea hearing.

4

7. The appellate court failed to rule on Petitioner's Judicial Acts to be Reviewed Motion.

8. The appellate court abused its discretion by relying on an inaccurate transcript of the plea colloquy.

[*Id*. at 78-119]. The trial court denied the motion, finding that claims one through five were duplicative of claims previously litigated. The court denied claim six, finding no evidence supported the claim. The court found it lacked jurisdiction to address claims seven and eight. [ECF No. 14-5 at 5].

On appeal of the denial of the motion, Petitioner reiterated the same claims he had raised in his Rule 3.850 motion. [*Id*. at 8-46]. Petitioner additionally argued that his First Amendment rights to due process were violated when the trial court erroneously denied his post-conviction motion as duplicative to a previously filed motion for post-conviction relief. [*Id*. at 21-24].

The state replied, arguing that although the trial court failed to attach documents to substantiate its ruling, the denial should be affirmed because the claims were either facially insufficient or refuted by the record of Petitioner's direct appeal. The appellate court affirmed the denial of the motion. *Johnson v. State*, 247 So. 3d 488 (Fla. 3d DCA 2018)(table). Mandate issued on July 12, 2018. [ECF No. 14-6. at 46].

On August 23, 2018, Petitioner filed the instant § 2254 in this court. He raises the following nine claims for relief:

1. The state trial court violated Petitioner's due process right by declaring his post-conviction motion a duplicate motion.

2. Counsel was ineffective for coercing Petitioner into accepting an illegal sentence.

3. The trial court erred by failing to address Petitioner's misrepresentation claim in its order denying his motion to withdraw plea.

4. Counsel was ineffective for placing the interests of the court above the interests of Petitioner.

5. Counsel was ineffective for coercing Petitioner into accepting a hardship plea as a habitual violent offender.

6. Counsel was ineffective for withholding the exonerating deposition testimony of the state's victim.

7. The trial court violated Petitioner's due process rights by altering the transcript of the plea colloquy.

8. The appellate court denied Petitioner's due process rights when it failed to rule upon his judicial acts to be reviewed motions.

9. The appellate court violated Petitioner's rights by relying on the altered transcript of the plea colloquy.

### III.    Statute of Limitations and Exhaustion

The state properly concedes that the petition was filed timely and that the claims raised have been exhausted.

### IV.    Standard of Review

A prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. § 2254(d)(1), (2); *see Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Fugate v. Head*, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams*, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. *Hall v. Head*, 310 F.3d 683, 690 (11th Cir. 2002) (citing *Williams*, 529 U.S. at 412). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002); *Parker v. Sec'y, Dep't of Corr.*, 331 F.3d 764, 775-76 (11th Cir. 2003).

So long as neither the reasoning nor the result of the state court decision

contradicts Supreme Court decisions, the state court's decision will not be disturbed. *Id.* Further, a federal court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

More recently, the U.S. Supreme Court in *Wilson v. Sellers*, ___ U.S.___, 138 S.Ct. 1188, 1194 (2018), concluded there is a "look through" presumption in federal habeas corpus law, as silence implies consent. *See also Kernan v. Hinojosa*, __ U.S. ___, 136 S. Ct. 1603, 1605-1606 (2016)(per curiam)(adopting the presumption that silence implies consent but refusing to impose an irrebuttable presumption). Where the state court's adjudication on the merits of a claim is unaccompanied by an explanation, the U.S. Supreme Court instructs that:

> [T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

*Wilson v. Sellers*, 138 S. Ct. at 1192. In other words, if the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* However, if the relevant state-court decision on the merits is not accompanied by a reasoned opinion, because it was summarily affirmed or denied, a federal court "should 'look

through' the unexplained decision to the last state-court decision that does provide a relevant rationale." *Id.*

The presumption, however, may be rebutted by showing the state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds briefed or argued to the higher court or obvious in the record. *Id.* at 1192, 1196. "Where there are convincing grounds to believe the silent record had a different basis for its decision than the analysis followed by the previous court, the federal habeas court is free, as we have said, to find to the contrary." *Id.* at 1197.

Moreover, the Supreme Court repeatedly has held that "[t]he petitioner carries the burden of proof" and that the § 2254(d)(1) standard is a high hurdle to overcome. *See Bobby v. Dixon*, 565 U.S. 23, 24 (2011)(quoting *Richter*, 560 U.S. at 102-103 (quotation marks omitted)); *Cullen v. Pinholster*, 563 U.S. 170, 180 131 (2011) (acknowledging that § 2254(d) places a difficult burden of proof on the petitioner); *Renico*, 559 U.S. at 777 ("AEDPA prevents defendants - and federal courts - from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)(§ 2254(d) "demands that state-court decisions be given the benefit of the doubt."); *See also Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017)(opining that to reach the level of an unreasonable application of federal law, the ruling must

be objectively unreasonable, not merely wrong or even clear error).

Thus, state court decisions are afforded a strong presumption of deference even when the state court adjudicates a petitioner's claim summarily—without an accompanying statement of reasons. *Richter*, 560 U.S. at 96-100 (concluding that the summary nature of a state court's decision does not lessen the deference that it is due); *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011) (acknowledging the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference, *citing Richter*, 560 U.S. at 100-101 and *Wright v. Sec'y for the Dep't of Corr's*, 278 F.3d 1245, 1254 (11th Cir. 2002)). *See also Renico*, 559 U.S. at 773 ("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings ... and demands that state-court decisions be given the benefit of the doubt." (citations and internal quotation marks omitted)).

Because the "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court," *Burt v. Titlow*, 571 U.S. 12, 19 (2013), federal courts can "grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fair-minded jurists could disagree.'" *Tharpe v. Warden*, 834 F.3d 1323, 1338 (11th Cir. 2016). This standard is "meant to be" a "difficult" one to meet. *See Harrington v. Richter*, 562 U.S. 86, 102 (2011).

The petitioner has raised several claims of ineffective assistance of counsel. The United States Supreme Court clearly established the law governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced him. *Id.* at 690. As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance. *Id.* The judiciary's scrutiny of counsel's performance is highly deferential. *Id.* at 689.

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Id.*

A defendant must satisfy both the deficiency and prejudice prongs set forth in *Strickland* to obtain relief on an ineffective assistance of counsel claim. Failure to establish either prong is fatal and makes it unnecessary to consider the other. *Strickland*, 466 U.S. at 697.

Combining AEDPA's habeas standard and *Strickland*'s two-pronged test provides the relevant inquiry in this case.  To obtain habeas relief, a petitioner must show the state court "applied *Strickland* to the facts of his case in an objectively

unreasonable manner" when it rejected his claims of ineffective assistance of counsel. *Bell v. Cone*, 535 U.S. 685, 699 (2002).

## V. Discussion

Petitioner has enumerated nine claims for relief. As discussed here, none of his claims merit relief.

### A. State Court Finding Duplicate Motion

In his first claim, Petitioner contends that the state trial court denied him due process by declaring his Rule 3.850 motion to be a duplicate of an earlier filed motion.

This claim was raised in Petitioner's appeal of the denial of his Rule 3.850 motion. The state trial court found that five of the claims raised in Petitioner's November 8, 2016 motion were duplicative of claims previously adjudicated. [ECF No. 14-5 at 5]. The state had argued these claims were duplicative of claims raised in a May 13, 2015 motion for post-conviction relief. [*Id.* at 2]. Neither party has provided either the May 13, 2015 motion or the order denying the motion. The claims dismissed as successive correlate to the claims two through six as raised in the instant petition. They will be discussed here. In the absence of record evidence that these claims were in fact duplicative of a prior motion for post-conviction relief and since the claims have been presented separately in the instant petition, each will be addressed in this report.

## B. Counsel Coerced Petitioner into Accepting Illegal Sentence

Petitioner contends that counsel was ineffective for coercing him to accept an illegal sentence. [ECF No. 1 at 7]. As was argued in state court, Petitioner alleges that the trial court was limited to sentencing him to no more a total of twenty-seven years. He contends that if he had known the sentence was illegal he would not have admitted the probation violations.

This claim was raised in the state trial court and denied as duplicative of a claim raised in a prior motion. Petitioner appealed the denial of this claim, however the trial court's ruling was affirmed without a written opinion.

Although the state court apparently mistakenly denied this claim as duplicative of a previously filed Rule 3.850 motion, its ruling was not incorrect. The state court did not impose an illegal sentence. Petitioner was originally sentenced to twenty-two years and six years of probation. Upon revocation of probation, the court was free to "impose any sentence it might have originally imposed." *See Gonzalez v. State*, 156 So.3d 550, 556 (Fla. 3d DCA 2015). The additional term of imprisonment for violation of probation did not exceed the statutory maximum that could have been imposed at the time the original sentence was imposed. The premise for Petitioner's claim is unsound; he did not agree to an illegal sentence. Since Petitioner did not agree to an illegal sentence, this claim should be denied.

## C. State Court Failure to Address Misrepresentation Claim

Petitioner next argues that the state court failed to address his claim that counsel made misrepresentations to induce his plea. [ECF No. 1 at 8]. He alleges that counsel advised him that the concurrent six-year sentences on the new charges and the probation violation would terminate at the same time.

This claim was raised in Petitioner's motion to withdraw his plea. The trial court denied this claim finding the record refuted Petitioner's claim as the fact that the sentences were not coterminous was explained in court prior to Petitioner entering his plea. [ECF No. 14-3 at 3].

The trial court's factual finding is supported by the record as the transcript of the plea colloquy shows that Petitioner was advised the sentences would not be coterminous. [ECF No. 14-2 at 58-59]. Since Petitioner was aware that the sentences were not coterminous, any claim that he was coerced or misled by counsel is refuted by the record.

## D. Counsel's Alleged Conflict of Interest

In his fourth claim, Petitioner argues that counsel placed the interest of the court ahead of the interest of the Petitioner in coercing him to enter a plea. [ECF No. 1 at 10]. He alleges that counsel threatened him that if he did not accept the plea he would receive a life sentence. He seems to argue that counsel was trying to avoid a court hearing or trial.

14

Although this claim was not expressly ruled on by the state court, it is, in any event, without merit. During the plea colloquy the prosecutor explained that Petitioner qualified as a Prison Release Reoffender and a Habitual Violent Offender. [ECF No. 14-2 at 26]. Petitioner's sentencing exposure if he proceeded to trial and lost was 169.35 months up to life imprisonment and any sentence would require a mandatory-minimum of ten years of imprisonment. [*Id*. at 26, 33]. Petitioner understood his sentencing exposure as explained at the hearing and had discussed the sentencing with counsel [*Id*. at 33, 36].

The court then expressed its understanding that Petitioner was not interested in any plea. [*Id*.]. Petitioner responded that he had intended to plead guilty to a five-year sentence with no probationary component but that the terms presented by the state were five years of incarceration followed by three years of probation. [*Id*. at 36-37]. He was not willing to agree to the three-year term of probation. [*Id*.]. Counsel stated that Petitioner had misunderstood him, explaining that he had told Petitioner he had "hoped" for an offer of five years, not that such an offer had been made. [*Id*. at 37].

Petitioner then told the court he believed the evidence showed he was innocent of "the written threat charge" and he was being forced to confess to it. [*Id*. at 38]. The court clarified that no one was forcing Petitioner to enter a plea. [*Id*.]. When Petitioner again said he had "no choice" the court stated: "You can go to a hearing

15

and you gamble. If you're a gambling man, you go to hearing. No one ever forces you to do anything you don't want to do." [*Id*.]. Petitioner responded, "I'm not intimidated by the hearing itself, but it just seems ironic, you know, when the evidence clearly exonerates me from sending this person a letter threatening her, I should be forced to take it on that ground but it's obviously [sic] I have no choice." [*Id*. at 38-39]. The court immediately corrected Petitioner's misconception about not having a choice and pointed out that the written threat to kill charge was just one of seven charges. [*Id*. at 39]. Petitioner responded that he understood. [*Id*.]. The court made clear that it would not accept a plea if in any way Petitioner was claiming he was being forced. [*Id*. at 40]. Petitioner then said he would accept a six-year plea and that he wanted to be done with the whole situation. [*Id*.].

This record conclusively refutes any allegation that counsel had divided loyalties that caused Petitioner to enter a plea. The court clearly advised Petitioner that he could proceed to a hearing. Petitioner expressed a complete understanding of his option to proceed to a hearing, and that he had no fear of doing so. Nevertheless, Petitioner freely and voluntarily entered the plea. There is no evidence that counsel had a conflict of interest which led to Petitioner entering a plea rather than proceed to a hearing.

**E. Counsel Coerced Petitioner into Accepting Plea as Habitual Offender**

Next, Petitioner argues that counsel coerced him into accepting a "hardship"

plea as a habitual violent offender. [ECF No. 1 at 12]. Although this claim references coercion, there are no allegations of coercion. Petitioner appears to contend he was actually innocent of the charges yet counsel advised him to enter a guilty plea. He argues that counsel withheld an exonerating deposition.

This claim is without merit. During the change of plea hearing Petitioner's counsel advised the court that he had deposed the victim and discussed it with Petitioner. [*Id*. at 40]. It was after the deposition that counsel and the prosecution discussed the possible resolution of the case. [*Id*. at 41].

The court later questioned Petitioner about his plea. [*Id*. at 43]. Petitioner told the court he was satisfied with his attorney. [*Id*.]. He agreed that he was freely and voluntarily entering a plea in exchange for a sentence of six years as a habitual violent offender to close out both the new substantive charges and the violation of probation. [*Id*.]. He was not forced or coerced by anyone to enter the plea. [*Id*.].

The court found a factual basis for the substantive charge and the violation of probation. [*Id*. at 51-52]. The court then found Petitioner had been convicted of two prior felonies and qualified as a habitual violent offender. [*Id*. at 53]. Since there is no evidence of coercion and Petitioner qualified as a habitual violent offender, this claim is without merit and should be denied.

## F. Counsel's Withholding of Exonerating Deposition

Petitioner next contends that counsel was ineffective for withholding the

deposition of the victim. [ECF No. 1 at 12]. He claims that the deposition of the victim exonerated him of the crimes. Although he has not included a copy of this alleged exonerating deposition, a portion of the deposition was included as in the appendix to the state's response. [ECF No. 14-3 at 76-83].

This claim was raised in Petitioner's motion for post-conviction relief. Although the state court denied this claim as duplicative it could have denied it on the merits.

In his motion for post-conviction relief Petitioner alleged that he spoke to counsel on August 19, 2014, two days before he entered his plea, and was advised that counsel would seek a dismissal of the new substantive charges "due to the state's victim exonerating him in her deposition." [*Id*. at 84]. Therefore, the existence of the victim's "exonerating" deposition was known to Petitioner before he entered his guilty plea. [ECF No. 14-2 at 24]. Since Petitioner was aware of the contents of the victim's deposition prior to entering his guilty plea, his claim that this information was withheld from him is refuted by the record. This claim should be denied notwithstanding any error the state court may have made in mischaracterizing this claim as successive or duplicative.

## G. Alteration of Transcript

In both his seventh and ninth claims Petitioner contends that the trial court altered the transcript of the plea colloquy. [ECF No. 1 at 13-14]. He argues that the

altered transcript did not present an accurate account of the hearing. He claims that the state court's rulings were based on the portions of the transcript that he refutes.

This clam was denied by the state court finding that there were no alterations to the transcript. Petitioner has not established that the state court's finding that there were no alterations to the transcripts was erroneous. In the absence of any evidence that the transcripts were altered, these two claims should be denied.

## H. State Appellate Court's Failure to Rule on Judicial Acts to be Reviewed

Petitioner contends that the appellate court failed to rule on his "Judicial Acts to be Reviewed." [*Id.* at 14]. It is unclear what Petitioner's complaint is. Under Florida law, "a statement of judicial acts to be reviewed is not sufficient to demonstrate what issues were in fact raised on appeal." *Stephens v. State*, 738 So. 2d 965 (Fla. 2d DCA 1999). Petitioner filed a brief on appeal and the state appellate court issued its decision on his appeal of the denial of his Rule 3.850 motion in a *per curiam* opinion. *See Johnson v. State*, 247 So. 3d 488 (Fla. 3d DCA 2018)(table). This claim is insufficient to warrant relief.

## VI.    Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal

must still be filed, even if the court issues a certificate of appealability. Rules Governing §2254 Proceedings, Rule 11(b), 28 U.S.C. foll. §2254.

After review of the record, Petitioner is not entitled to a certificate of appealability. "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). *See also Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims raised are either procedurally barred or without merit, Petitioner cannot satisfy the *Slack* test.

## VII.   Conclusion

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied, that no Certificate of Appealability issue and the case be closed.

Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the court. Failure to do so will bar a *de novo* determination by the District Judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474

U.S. 140, 149 (1985).

      SIGNED this 26th day of June, 2020.

                                        _____

                                        UNITED STATES MAGISTRATE JUDGE

cc:    Raymond Johnson
        13280 Port Said Road
        Apt #C204
        Miami, FL 33054
        PRO SE

        Linda S. Katz
        Attorney General Office
        Department of Legal Affairs
        444 Brickell Avenue
        Suite 650
        Miami, FL 33131
        305-377-5441
        Email: linda.katz@myfloridalegal.com